(No. 50469.—

CHARLES HOWARD, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Anderson-Clayton Company, Appellee).

*Opinion filed May 22, 1980.*

Calandrino, Logan & Robeson, P.C., of Springfield (J. Jay Robeson, of counsel), for appellant.

Robert L. Mueller, of Livingstone, Mueller, Drake & Davlin, of Springfield, for appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

In proceedings under the Workmen's Compensation Act (Ill. Rev. Stat. 1969, ch. 48, par. 138.1 *et seq.*) an arbitrator for the Industrial Commission found that claimant, Charles Howard, was disabled as a result of accidental injuries sustained while he was employed by respondent, Anderson-Clayton Company. The arbitrator awarded claimant compensation of $95 per week for a period of 64 weeks for temporary total incapacity, and compensation of $75 per week for a period of 60 weeks for the permanent and complete loss of the use of the left leg to the extent of 10% thereof and the right leg to the extent of 20% thereof. On review, the Commission affirmed the arbitrator's decision. On January 27, 1975, claimant filed a petition under section 19(h) of the Workmen's Compensation Act (Ill. Rev. Stat. 1969, ch. 48, par. 138.19(h)) alleging an increase in disability and additional medical expenses. This hearing was held on December 8, 1975, and the Commission found that claimant had failed to demonstrate an increase in his

disability. On *certiorari,* the circuit court of Morgan County confirmed both decisions of the Industrial Commission, and claimant appealed to this court pursuant to our Rule 302(a) (73 Ill. 2d R. 302(a)). Claimant argues in this court that the Commission's finding that his injury had reached a permanent state, and the Commission's denial of his section 19(h) petition, are against the manifest weight of the evidence.

On December 4, 1971, claimant was employed by respondent. On this date, while lifting a 30-pound box in a "stooped over" position, claimant experienced a sharp pain in his lower back. He continued to perform his assigned duties, avoiding any tasks that involved additional lifting, and finished the remainder of his shift. The following day, December 5, claimant continued to experience pain in his lower back which radiated down both his legs. As a result, claimant found himself unable to walk. He was taken to Passavant Memorial Area Hospital, where his condition was diagnosed as an "acute dorsal back strain." He was admitted to the hospital and remained under the care of Dr. Harold Norris through December 8, 1971. On December 16, claimant returned to his regular employment with respondent. He once again experienced pain in his lower back and legs, finished his shift, and informed his supervisor that he could not continue performing his regularly assigned duties. He returned to his employment the first week of January 1972, and at this time was assigned to a position classified as "light work." He continued working in this position through March 22, 1972, at which time he was laid off. Respondent called claimant to return to work on June 26, 1972, and he was assigned to a position as a line inspector. His duties involved standing for extended periods of time and frequent bending to retrieve articles which had fallen off the inspection line. On June 30, 1972, claimant once again informed his supervisor that he could not work because of the pain in his back and legs, and he has since

continued unemployed. There is conflicting evidence concerning an offer by respondent to employ claimant in a clerical position. Claimant states that he accepted the offer, but contends that it was subsequently withdrawn. Respondent contends that claimant declined this offer of employment.

Subsequent to his discharge from Passavant Hospital in December 1971, and throughout the aforementioned period, claimant was treated by several physicians on an out-patient basis. He first sought treatment from Dr. Joseph J. Kozma on January 22, 1972, and continued under his care through April 21, 1972. Dr. Clifford J. Lynch, an orthopedic specialist furnished by respondent, treated claimant from May 10, 1972, through May 16, 1973. In addition, claimant was treated by Dr. Matias R. Castro, a specialist in neurosurgery, from May 23 through September 27, 1973. Claimant did not seek additional treatment for his back injury.

In the proceedings before the arbitrator on January 11, 1974, claimant testified that he continued to experience constant pain in his lower back and both legs, and that this pain increased when standing for periods longer than 30 to 45 minutes. In addition, he stated that he was unable to bend or stoop and that he experienced difficulty in lifting objects. Claimant further stated that he declined Dr. Lynch's recommendation to undergo a spinal fusion, stating as his reason the lack of assurance that this operation would improve his condition. He did, however, follow Dr. Lynch's recommendation concerning vocational rehabilitation for a sedentary position, and had enrolled in accounting courses at a local university. Claimant testified that respondent had offered, and that he had accepted, a clerical position which would not involve standing or lifting. He stated further that this offer had been withdrawn. In claimant's opinion, his injury had progressively deteriorated from December 4, 1971, and continued to deteriorate.

Claimant introduced into evidence the records of his military physical examination, the records of his hospitalization at Passavant Memorial Area Hospital, a letter from Dr. Lynch to respondent, and the reports of Dr. Kozma and Dr. Castro. Claimant's military physical examination indicated that his spine and musculoskeletal system were normal. The records from Passavant indicated that claimant was unable to stand erect at the time of his admission; that he was experiencing sharp pain in his lower back and legs; that his condition was diagnosed as an "acute dorsal back strain"; and that upon discharge his pain had decreased and he was ambulatory. The letter from Dr. Lynch to respondent, dated July 5, 1972, indicated that claimant's back condition was aggravated by prolonged standing and that it would be beneficial if he could be employed in a job which would allow him to remain seated. The report of Dr. Kozma, dated February 22, 1972, indicated that claimant was suffering from a "low back syndrome"; that straight leg raising was possible only to a 45-degree angle; and that claimant should be examined by a neurosurgeon for further diagnosis of his condition. Dr. Kozma's report of April 29, 1972, stated that he had examined claimant on March 3, March 23, and April 21, 1972, and that, although claimant continued to experience pain, his straight leg movement had increased to 85 degrees. The reports of Dr. Castro, dated May 23, June 13, and August 24, 1973, indicated that claimant was suffering from "Grade I spondylolisthesis at L5-S1 with associated bilateral spondylolysis." On August 29, 1973, Dr. Castro reported that the progression of claimant's "spondylolisthesis is very minimal, if at all." He recommended a conservative nonoperative management of this condition.

Respondent introduced into evidence the reports of Dr. Lynch. These reports, dated May 16, 1972, April 25, 1972, and November 19, 1973, indicated that claimant was suffering from congenital "spondylolisthesis with

pars interarticulares defects bilaterally." In the report dated November 19, 1973, Dr. Lynch indicated that claimant's condition remained essentially unchanged, finding no progressive deterioration. This report also stated that Dr. Lynch had recommended a spinal fusion and that claimant had declined.

On May 13, 1974, on review before the Industrial Commission, claimant testified that he continued to experience constant pain in his lower back and both legs. He stated that he occasionally experienced headaches, a "sharp flash of pain" in his lower back, and a "clicking" noise in the small of his back when walking on hard floors. He stated that he had discontinued wearing a back brace recommended by Dr. Castro because this did not reduce his pain. Claimant did not introduce any additional medical reports.

On cross-examination, claimant stated that he was pursuing an associate's degree in accounting. He stated that his daily activities included driving to and from his classes, occasional light housework, walking the dog, and mowing the lawn when necessary. He also stated that he did not inform his physician of his headaches.

Respondent called Ron Luck, formerly employed as an employee-relations supervisor for the Anderson-Clayton Company, as its only witness. Luck's testimony substantially corroborated the prior testimony of claimant concerning the sequence of positions that he held after his injury. Luck did testify, however, that claimant had been offered a clerical position but had refused to accept the position because he was enrolled in school. On rebuttal, claimant testified that he had unconditionally accepted the position offered by respondent, stating that the offer was later withdrawn.

The first issue presented is whether the finding by the Commission that claimant's injury had reached a permanent condition is against the manifest weight of the evidence. Claimant agrees that temporary disability, as

distinguished from permanent disability, is a condition which exists until the injured workman is as far restored as the permanent character of his injury will permit. (*Consolidated Coal Co. v. Industrial Com.* (1924), 311 Ill. 61, 64.) Claimant argues, however, that the resolution of this question requires the opinion of a medical expert, contending that none of the medical reports introduced in the proceeding before the arbitrator contained an opinion as to permanency. Claimant suggests that he is temporarily totally disabled until he completes his associate's degree in accounting and is able to find sedentary employment. Claimant does not contend that he is permanently and totally disabled.

We agree that temporary disability is a condition which exists until the injured workman is as far restored as the permanent character of his injury will permit. We do not agree, however, that it is necessary for a medical expert to categorically state that the injury has reached a permanent condition in order to support a finding of permanent partial disability. (*Page Enterprises, Inc. v. Industrial Com.* (1980), 78 Ill. 2d 287, 290.) Whether an employee has sustained an injury which renders him permanently disabled is a question of fact to be resolved by the Commission. Although the Commission's conclusion must be supported by more than mere conjecture, it is the function of the Commission to resolve conflicting evidence, to draw reasonable inferences from the facts, and to conclude from an evaluation of all of the evidence whether the employee is permanently disabled. *Goldblatt Bros. v. Industrial Com.* (1979), 78 Ill. 2d 62, 67.

In the present case, claimant introduced the medical reports of Dr. Castro, his consulting physician. Dr. Castro concluded after review of claimant's medical records, including a comparison of X rays taken immediately after the injury with X rays taken two years later, that any change in claimant's condition was "very minimal, if at all." The medical reports of Dr. Lynch, introduced by

respondent, were consistent with the opinion of Dr. Castro. Dr. Lynch concluded, after periodic examination of claimant's condition through the course of one year, that his condition remained essentially unchanged. In addition, the Commission could reasonably infer from claimant's description of his condition that he was as far restored as the permanent character of his injury would permit. We find, after consideration of the record, that the Commission's decision on the question of permanent disability is not against the manifest weight of the evidence.

The second issue presented is whether the Commission's denial of claimant's section 19(h) petition is against the manifest weight of the evidence. Claimant argues that the preponderance of the evidence demonstrates that claimant was temporarily totally disabled through December 8, 1975, the date of the section 19(h) proceeding.

On December 8, 1975, a hearing was held before the Industrial Commission pursuant to claimant's petition, alleging an increase in disability, under section 19(h). Claimant testified at this hearing that he had been hospitalized for psychiatric treatment on two separate occasions in 1974. He was uncertain of the dates of his hospitalizations, but he believed that they were in November and December. Claimant was treated by Dr. Philip Woerner and received "shock treatments" and a myleogram while hospitalized. He stated that at this time "I had a lot of trouble with my back and I became very bitter about it and I guess I went overboard." In reference to his present condition, he stated that he continued to experience difficulty with his back, pain in his legs, and, at times, lapses in memory. Claimant stated that he continued to pursue his degree in accounting.

On cross-examination, claimant stated that the pain that he experienced in his legs and back was essentially the same as the pain that he experienced in May 1974,

the date of the first proceeding before the arbitrator. He also stated that the pain that he currently experienced was essentially the same as the pain that he experienced in January 1974, the date of the proceeding on review before the Commission. Claimant stated that he continued unemployed, and that the only treatment that he sought for his condition was from Dr. Woerner. In addition, he stated that he continued to do light housework; occasionally mowed the lawn; walked the dog; and continued to pursue his degree in accounting.

Claimant introduced into evidence, in addition to documents not relevant to this appeal, the evidence deposition of Dr. Woerner. This deposition does not appear in the certified record of the proceedings below, nor is its absence explained by claimant in his brief on appeal. A narrative summary of this evidence does appear, however, in claimant's abstract of the record. On September 16, 1978, claimant filed in this court a motion to reform the transcript, seeking to include this evidence in the record on appeal. This motion was denied on September 21, 1978. Claimant's motion for reconsideration of this denial was also denied on November 15, 1978. On March 11, 1980, respondent filed a motion to quash or, in the alternative, to expunge those parts of claimant's brief and abstract of record which requested this court's consideration of Dr. Woerner's deposition. We agree with respondent that this summary of the proceedings below is not properly before us. We therefore do not address the arguments advanced by claimant related to this material.

In a section 19(h) proceeding, the issue presented is whether "the disability of the employee has subsequently recurred, increased, diminished or ended." (Ill. Rev. Stat. 1969, ch. 48, par. 138.19(h).) A proceeding under this section is not a means by which a prior decision of the Industrial Commission can be reversed. The purpose of a section 19(h) proceeding is to determine whether the

disability has changed subsequent to an award or agreed settlement. The evidence presented in the original proceedings is relevant for the purpose of determining whether or not the claimant's condition at the time of the award has changed. (*Zimmerly Construction Co. v. Industrial Com.* (1972), 50 Ill. 2d 342, 344.) Claimant's contention that he was temporarily totally disabled through December 8, 1975, the date of the section 19(h) proceeding, was not an issue properly brought before the Commission by way of a section 19(h) petition. The question of temporary total disability was determined by the Commission's affirmance of the arbitrator's award which limited temporary total disability payments to 64 weeks; the Commission concluded that, at that point, claimant's condition had stabilized and that the permanent nature and extent of the injury could be assessed. That determination could not be reviewed under section 19(h). Claimant does not contend that the Commission's finding that his disability had not increased from the date of the first award was against the manifest weight of the evidence. Our review of the evidence, even if we were to consider the improperly presented deposition of Dr. Woerner, does not suggest that this finding is against the manifest weight of the evidence. We therefore affirm the decision of the circuit court.

*Judgment affirmed.*