Fiore R. Palmeri, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania State Police, Respondent.

Argued September 12, 1983, before Judges ROGERS, WILLIAMS, JR. and CRAIG, sitting as a panel of three.

*Anthony C. Busillo, II*, with him, *Gary M. Lightman, Mancke, Lightman & Wagner*, for petitioner.

*Joseph S. Rengert*, Assistant Counsel, for respondent.

OPINION BY JUDGE WILLIAMS, May 9, 1984:

Fiore R. Palmeri was injured while performing his duties as a Pennsylvania State Police officer on February 24, 1978. As a result of this injury, which affected his back and right knee, Palmeri was incapacitated to continue his regular duties on the force. The disability was deemed "temporary", and accordingly, he was determined eligible under the "Heart and Lung Act" (Act)[1] to continue to receive his full salary and benefits until his temporary disability ceased. Palmeri remained out of work due to the injury and continued to receive his full salary until July 16, 1982, when the State Police determined that his disability could no longer be considered "temporary."[2] The State Police predicated its determination on the length of time that Palmeri had been disabled—a period in excess of 1500 days—and the absence of a favorable prognosis in the medical records relative to the condition caused by the injury. Palmeri has appealed from this determination.

Palmeri has raised a number of procedural challenges to the determination, most of which seem to bear on the informality of the hearing provided by the

---

[1] Act of June 28, 1935, P.L. 477, §1, 53 P.S §637, *as amended* May 31, 1974, P.L. 309, No. 99, §1, 53 P.S. §637 (Supp. 1983-84)

[2] Once disqualified under the Heart and Lung Act, Palmeri was still eligible for Workmen's Compensation benefits. He also had the option of continuing on the force on paid or unpaid sick leave, of retiring from the force, or of returning to work with certification from a doctor that he was capable of resuming full or limited duty.

State Police.[3]  We decline to specifically address these procedural questions because, having reviewed the record as a whole, we do not believe that the hearing process was either inadequate under the Administrative Agency Law,[4] or fundamentally unfair; and because we believe that important substantive reasons require our reversal of the adjudication.

The principal difficulty of this case is the absence of articulated standards for determining when a disability, once having been classified as temporary under the Act, may be deemed permanent.  No standard is suggested by the statute itself, which states merely that "any member of the State Police Force . . . who is injured in the performance of his duties . . . , and by reason thereof is *temporarily incapacitated* from performing his duties, shall be paid . . . his full rate

---

[3] For example, Palmeri contends that he was denied his right to cross-examine witnesses because the medical evidence upon which the State Police relied—all records submitted by Palmeri's physicians —were not formally entered into the record through testimony of a witness.  It is clear, however, that Palmeri was advised prior to the hearing that the State Police would review the submissions of his physicians, that he had access to the medical reports, and that he had the opportunity to present testimony of his physicians if he felt it was necessary.

[4] Act of June 4, 1945, P.L. 1388, §31, 71 P.S. §1710.31.  This section states that:

> No adjudication shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard.  All testimony shall be stenographically recorded and a full and complete record should be kept of the proceeding

Furthermore, the Pennsylvania Supreme Court has held that no adjudicatory action, whether judicial or administrative, shall be valid in the absence of ". . . a hearing wherein each party has the opportunity to know the claims of his opponent, to hear the evidence produced against him, to cross-examine witnesses, to introduce evidence on his own behalf, and to make argument." *Callahan v. Pennsylvania State Police*, 494 Pa. 461, 465, 431 A.2d 946, 948 (1981).

of salary . . . until the disability arising therefrom has ceased. 53 P.S. §637 (emphasis added).[5] Nor is the legislative history helpful in suggesting the line of demarkation between temporary and permanent disabilities.[6] The few court decisions which deal with the Act offer no standards, and those which deal with related disability statutes are only marginally helpful in delimiting the concept of "temporary." *See e.g. Woodward v. Pittsburgh Engineering & Construction Co.,* 293 Pa. 338, 143 A. 21 (1928); *c.f. Duthie v. Workers' Compensation Appeals Board,* 86 Cal. App. 3d 721, 150 Cal. Rptr. 530 (1978) ("A disability is considered permanent after the employee has reached maximum improvement or his condition has been stationary for a reasonable period of time. . . ."). Surely, any definition which might be devised would have to confront the practical reality that the duration of a "temporary" disability might vary widely depending on the nature of the ailment.

Because there are no statutory standards or guidelines for distinguishing permanent from temporary disabilities under the Act, it was critical for the State Police to establish on the record a factual basis for concluding that the duration of Palmeri's incapacitation raised a reasonable inference of permanence. In order to conclude that his condition was permanent there needed to be evidence linking Palmeri's circumstances—*i.e.* the nature of his condition, his treatment

---

[5] By way of comparison, the federal Social Security Act specifically defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted. or can be expected to last, for a continuous period of not less than 12 months." 42 U.S.C. §§416(i) (1) (A) & 423(d) (1) (A) ; 20 C.F.R. §§404.1, 404.1505(a) (1980).

[6] For a summary of the early legislative history of the Act, *see Kurtz v. City of Erie,* 389 Pa. 557, 133 A.2d 172 (1957).

history, his general health, his current medical status, and other relevant factors—to a scientific probability that his condition would not improve sufficiently to make him capable of returning to active duty. We find no such evidence in the record in this case.

The State Police's determination relies heavily on a January, 1982 report from Palmeri's physician which states: "Since I am unable to predict when [Palmeri's] pain will subside, it is reasonable to assume that this pain *may* be a permanent disability and prevent him from performing any job." (Emphasis added.) Reliance on this statement is unavailing for two reasons. First, the physician, in the same report, stated that he believed that the only reasonable way of determining whether Palmeri had the capacity to perform sedentary jobs was to employ him for a trial period in such a position. Second, we are aware of no context in which so equivocal an expert assessment is allowed to serve as the basis for an ultimate factual finding. It is clear that, while an expert's opinion need not be based on an absolute certainty, an opinion based on mere possibilities is not competent evidence. *Niggel v. Sears, Roebuck and Co.*, 219 Pa. Superior Ct. 353, 281 A.2d 718 (1971).

Nor is the State Police's reliance on an absence of a favorable prognosis warranted. The State Police do not dispute the fact that it had the burden of justifying termination of Palmeri's coverage under the Act. It was obligated to support that burden affirmatively with evidence of a prognosis incompatible with a temporary disability; it could not rely on a negative inference drawn from the guardedness of the physician's evaluation, especially where the physician expressed an opinion that a trial work period would be the best way of determining the extent of Palmeri's ability to resume substantial employment.

Our scope of review in cases such as this is limited. However, we have an affirmative obligation to reverse an adjudication which lacks substantial support in the record. *See Klingerman Nursing Center v. Department of Public Welfare*, 73 Pa. Commonwealth Ct. 470, 458 A.2d 653 (1983). Due to the absence of record support for the State Police's finding that Palmeri's condition was no longer temporary, we reverse the decision and remand this matter for reinstatement of Palmeri's compensation consistent with the Act.

ORDER

AND Now, this 9th day of May, 1984, the adjudication of the Pennsylvania State Police is reversed and the case is remanded for reinstatement of compensation under the Heart and Lung Act. Jurisdiction relinquished.