499 A.2d 278

**Fiore R. PALMERI, Appellee,**

**v.**

**COMMONWEALTH of Pennsylvania, Pennsylvania State Police, Appellants.**

Supreme Court of Pennsylvania.

Argued May 15, 1985.

Decided Sept. 24, 1985.

Joseph S. Rengert, Harrisburg, for appellants.

Anthony C. Busillo, II, Harrisburg, for appellee.

Before NIX, C.J., and FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

In this appeal we are called upon to decide the question of: where an employee is receiving Heart and Lung Act[1] benefits because of a disabling injury, what proof is required of an employer to establish that the incapacity is permanent rather than temporary[2] and thus, allow the employer to discontinue such benefits.

On February 24, 1978, the appellee, Fiore R. Palmeri, while on duty as a Pennsylvania State Trooper,[3] injured his back, right hip and right knee. Because of these injuries, Palmeri began a work-related disability leave on March 7, 1978. He started receiving all benefits provided for by the Heart and Lung Act, including his full salary. The relevant provisions of the Heart and Lung Act provide:

> That any member of the State Police Force ..., who is injured in the performance of his duties ... and by reason

1. 53 P.S. § 637.

2. The kind of incapacity we are concerned with here is that which prevents an employee from performing the duties of his employment.

3. At the time of his injury, Palmeri was serving, in a supervisory capacity, at a driver's examination duty station where those seeking operators licenses are tested. He had been so assigned since 1966.

thereof is temporarily incapacitated from performing his duties, shall be paid by the Commonwealth of Pennsylvania if a member of the State Police Force . . . , his full rate of salary, as fixed by ordinance or resolution, until the disability arising therefrom has ceased. All medical and hospital bills incurred in connection with any such injury shall be paid by the Commonwealth of Pennsylvania. . . . During the time salary for temporary incapacity shall be paid by the Commonwealth of Pennsylvania . . . , any Workmen's Compensation, received or collected by any such employe for such period shall be turned over to the Commonwealth of Pennsylvania . . . and paid into the treasury thereof, and if such payment shall not be so made by the employe the amount so due the Commonwealth of Pennsylvania, . . . shall be deducted from any salary then or thereafter becoming due and owing.

As amended 1974, May 31, P.L. 309, No. 99 S 1(a), 53 P.S. § 637(a).

The injury to the right knee proved to be the most troublesome to Palmeri. At the outset, his knee injury was treated by whirlpool baths and physical therapy to no avail. In April, 1978, the appellee had corrective surgery performed on his right knee. This was the first of four such operations he underwent between 1978 and 1982. In addition, he received physical therapy treatments on a regular basis.

In March, 1982, Palmeri received notice from his employer, the Pennsylvania State Police, notifying him, inter alia, that:

The period of time during which compensation has been paid to you for your work-related injury has exceeded that which is ordinarily indicative of a temporary disability. *Therefore, it must be determined whether or not your disability is permanent.*

You may wish to appear to present testimony or medical records concerning your condition. If so you must contact this Bureau within ten (10) days of receipt of this letter. The time and place of the hearing will then be established.

> If you choose not to appear for a hearing *the temporary or permanent nature of your disability will be determined* independently. The determination will be based upon records and reports now on file and the results of any pending medical examination ordered by the Department or State Workmen's Insurance Fund (SWIF). [emphasis supplied].

Palmeri responded by informing the State Police that he would appear and testify. On June 29, 1982, a hearing was held before a three-member State Police Hearing Panel. Palmeri was the only witness to appear and give testimony. Although he testified that he was somewhat skeptical as to his ability to perform a job which required him sitting at a desk for eight hours a day in that he thought he may get stiff, he was optimistic about his capacity to discharge the duties of the supervisory position he held at the time he was injured.

After considering the testimonial evidence given by the appellee and reviewing various medical reports and hospital records contained in Palmeri's file, the hearing panel ruled that Palmeri could not be classified as "temporarily incapacitated," and therefore, he was no longer entitled to receive benefits under the Heart and Lung Act. The panel based its decision "primarily upon the length of time [Palmeri's] disability [had] continued and the absence of [a] favorable prognosis for [his] return to work."[4] Palmeri appealed and the Commonwealth Court reversed, 82 Pa.Cmwlth. 348, 474 A.2d 1223, concluding that the decision of the hearing panel was not supported by substantial evidence. We agree and affirm.

█ Under Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704, the scope of review in appeals from Commonwealth agency action is limited to a determination

---

4. The hearing panel's written notification of its decision poses a problem of review for this Court in that it lacks specificity. Unlike a referee's decision in a Workmen's Compensation case for example, the panel made no specific findings of fact that were set forth as a basis for its conclusions, nor did the panel give us the benefit of any reasoning in support of its decision.

of whether constitutional rights have been violated, an error of law has been committed, or the findings and conclusions are supported by substantial evidence. *Barasch v. Pennsylvania Public Utility Commission, Philadelphia Electric Company, et al.*, 507 Pa. 561, 493 A.2d 653 (1985). Findings made by an administrative agency must be based upon substantial evidence. "Substantial evidence is such relevant evidence as reasonable mind[s] might accept as adequate to support a conclusion." *Republic Steel Corporation v. Workmen's Compensation Appeal Board*, 492 Pa. 1, 421 A.2d 1060 (1980); *Norfolk & W. Ry. Co. v. Pennsylvania Public Utility Commission*, 489 Pa. 109, 413 A.2d 1037 (1980).

██ A thorough review of the record in this case demonstrates that the findings and conclusions made by the State Police hearing panel are not supported by substantial evidence. The panel relied primarily on: (1) the fact that more than four years had passed from the time Palmeri was injured without his returning to work and, (2) a series of medical reports made by Alexander Kalenak, M.D., the appellee's treating physician, which individually and collectively fail to affirmatively suggest that Palmeri will be able to return to work at some definite time in the future. The latest report contained in appellee's file at that time and relied upon by the hearing panel was dated January 15, 1982. There Dr. Kalenak reported:

The degree of disability has not been determined. Mr. Palmeri states that the pain is so severe that he is unable to perform the duties he was performing at the time of his injury. Since I am unable to predict when this pain will subside, it is reasonable to assume that this pain may be a permanent disability and prevent him from performing any job.

*Before an answer can be given to whether or not he can function in a sedentary position, I believe it is important that the patient have a trial of a sedentary position. That is the only reasonable way to determine whether or not he can tolerate a sedentary position.* His only limitations are that he should not sit or stand for

an extended period of time and that he refrain from repetitive type activities and squatting, crawling, etc.[5] [emphasis supplied].

This was typical of the kind of reports which Dr. Kalenak had been making since March, 1980. On the question of whether Palmeri's disability is permanent Dr. Kalenak's reports are inconclusive.

█ A disability that eventually ends is not rendered permanent because of the length of time it persisted. If it could be determined at the onset of a disability that the injured employee would be disabled for seven years, we

5. On March 5, 1980, Dr. Kalenak reported:
"I am unable to estimate the future length of disability. My estimate of approximate rating of permanent physical impairment of the right lower extremity should his disability continue is 35%."
On March 31, 1980, Dr. Kalenak reported:
"I hope that with intensive rehabilitation, he might be able to return to work in some time in the future. I am unable to give any prediction of a date when he might be able to return to work."
In a report dated September 3, 1980, Dr. Kalenak said:
"I have read your description of the functions that would be required of Mr. Palmeri while working at the Communications Desk. It sounds as though he could perform those functions, but I am unable to arrive at the same definite conclusion stated in paragraph two of your letter, i.e. 'It is concluded that working at the Communications Desk would be within Corporal Palmeri's physical capabilities.' He may or may not be able to perform those duties and I will not presume to say that he will be able to do them without reservation."
"The only true way to know whether or not he will be able to perform those duties is to put him to the test and have him perform those duties on the job. If he performs them satisfactorily, then he should have a clearance to work. If he does not perform them satisfactorily, then he should not have clearance."
In a report of October 13, 1980, Dr. Kalanek stated:
"Enclosed is a letter that I had written to Mr. Nunzio A. Medile on 3 September 1980. As you can see from my letter, I stated that there was one valid way to determine whether or not a person can perform his work. That way is to put them through a performance test. Mr. Palmeri may be able to perform the work at the Communications Desk, but he should have a trial of work at the Communications Desk to make a valid determination."
On December 11, 1981, Dr. Kalanek reported:
"He is now in the process of rehabilitating the knee. The prognosis is uncertain. I am unable to state at this time whether further surgery may be required. I am always optimistic that the patient will completely recover. There are some degenerative joint changes, which

would not say that the employee will be permanently disabled for seven years.

Whether a person be disabled for days, months or years, if he ultimately recovers he has not been *permanently* disabled. Disability is permanent only when it endures for life. If [a person], who was forty-four years of age, was disabled until he was forty-six, thereafter recovered and returned to work, it would be a linguistic absurdity to say of a person that he was *permanently disabled for two years.*

*Pearlman v. Metropolitan Life Insurance Co.*, 336 Pa. 444, 450, 9 A.2d 432, 435 (1939).

■ A temporary disability on the other hand, whether it be total or partial, is the healing period following an injury. "[I]t begins with the disabling injury and continues until such time as the employee reaches the maximum benefit from medical treatment or, differently expressed, it is a condition which exists until the injured employee is cured or is as far restored as the permanent character of his injuries will permit." *Triangle Distributors v. Russell,* Miss. 268 So.2d 911, 912. *See also Howard v. Industrial Commission,* 405 N.E.2d 750, 753, 81 Ill.2d 50; As long as recovery or lasting improvement can reasonably be expected a disability continues to be temporary. *Corral v. McCrory Corp.,* Fla. 228 So.2d 900, 903.

The appellee, Palmeri, was receiving full statutory benefits because of a disability deemed to be temporary. For Palmeri to be denied those benefits in the context of the issues in this case, it must be shown by substantial evidence that his disability is permanent. This could be done by expert medical opinion to that effect, not by merely considering the length of time the disability has lasted and the lack of a favorable affirmative prognosis. On the record in this case we fail to find such relevant evidence as a reasonable mind might accept as sufficient to support the conclusion that Palmeri's disability is permanent.

may have an adverse effect on the prognosis. I would hope that Mr. Palmeri will recover enough function so that he may be able to walk."

■■■■ The appellant argues that the Commonwealth Court erred in setting forth the standard of proof necessary to discontinue Heart and Lung Act benefits. In discussing the proof required, the Commonwealth Court said:

> [I]t was critical for the State Police to establish on the record a factual basis for concluding that the duration of Palmeri's incapacitation raised a reasonable inference of permanence. In order to conclude that his condition was permanent there needed to be evidence linking Palmeri's circumstances—i.e. the nature of his condition, his treatment history, his general health, his current medical status, and other relevant factors—to a scientific probability that his condition would not improve sufficiently to make him capable of returning to active duty.

*Palmeri v. Commonwealth of Pennsylvania*, 82 Pa. Cmwlth. 348, 474 A.2d 1223 (1984). We find no error in this standard, but add the duration of the disability flowing from the injury as an equal factor. The evidence must raise a reasonable inference that the disability is permanent. This can be established by expert medical testimony that there is a scientific probability that the disability will not improve to a point where the injured employee may return to work. By producing credible evidence of such a scientific probability, a reasonable inference of permanence may be established. This standard is consistent with the provisions of the Heart and Lung Act which provide that benefits shall be paid until the disability ends and the injured employee is able to resume performing the duties of his employment. The employment duties in this case may be limited to those involved with the kind of supervisory work Palmeri was performing at the time of his injury or to those associated with a desk or administrative position. We reject the argument of the State Police that it was error for the Commonwealth Court to consider Palmeri's capacity to perform particular sedentary jobs. It is not necessary that an injured trooper recover so that he is able to perform every conceivable function that could possibly arise in connection with a policeman's duties generally. It is enough

that his recovery enable him to perform the duties of a position that is regularly assigned to state policemen even though the job be entirely sedentary. Palmeri's benefits may be discontinued only when there is evidence which raises a reasonable inference that his incapacity is permanent and he will be unable to perform such duties. The record in this case lacks such evidence.

The order of the Commonwealth Court is affirmed.

HUTCHINSON, J., filed a dissenting opinion in which McDERMOTT and PAPADAKOS, JJ., joined.

## JUDGMENT

ON CONSIDERATION WHEREOF, it is hereby ordered and adjudged by this Court that the Order of the Commonwealth Court is affirmed.

HUTCHINSON, Justice, dissenting.

I dissent. I believe that the length of disability coupled with the medical testimony presented in this case are sufficient to permit a reasonable inference that appellee is permanently disabled.

McDERMOTT and PAPADAKOS, JJ., join in this opinion.