809 A.2d 369

**William J. DURANTE, Appellee**

v.

**PENNSYLVANIA STATE POLICE, Appellant.**

Supreme Court of Pennsylvania.

Argued Nov. 13, 2001.

Decided Oct. 25, 2002.

Thomas F. Jakubiak, Barbara L. Christie, James M. Sheehan, Harrisburg, for appellant, PA State Police.

James L. McAneny, Gary M. Lightman, Harrisburg, for appellant, William J. Durante.

Before FLAHERTY, C.J., ZAPPALA, CAPPY,
CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

### OPINION ANNOUNCING THE JUDGMENT
### OF THE COURT

Justice CAPPY.

We granted allocatur to determine whether William Durante (Trooper Durante) was temporarily incapacitated from his duties as a state trooper such that he is entitled to benefits pursuant to the Heart and Lung Act ("Act").[1] For the following reasons, we now affirm.

The facts of this case are not in dispute. On June 13, 1985, Trooper Durante sustained a work-related injury to his right arm when he was carrying two boxes of highway flares. After he returned to work, Trooper Durante suffered several recurrences of the original injury; because of these recurrences, he was assigned to a light duty position working for Staff Services in 1988. The Staff Services position to which Trooper Durante was assigned has been held only by state troopers. The Staff Services position did not, however, implicate some of the duties expected to be performed by a state trooper assigned to the field, such as forcibly arresting a person, performing rescue functions, and handling and discharging a firearm.

In 1993, Trooper Durante suffered yet another recurrence of the original injury and underwent surgery. During his eight-month post-operative recuperation period, Trooper Durante was incapacitated from performing his duties in Staff Services and thus did not work during that period. Trooper Durante returned to his Staff Services position in August of 1993; he worked in this position until his retirement in 1995.

Because he could not work at his Staff Services position during the 1993 recurrence of his injury, Trooper Durante applied for benefits under the Act. These benefits are payable to a state trooper "who is injured in the performance of his duties ... and by reason thereof is temporarily incapacitated

1. Act of June 28, 1935, *as amended,* 53 P.S. § 637.

from performing his duties...." 53 P.S. § 637(a). Benefits paid pursuant to the Act are equal to the trooper's full salary.

The Pennsylvania State Police (State Police) denied Trooper Durante benefits. The State Police determined that although Trooper Durante could perform his Staff Services duties, his injuries permanently prevented him from performing the full range of essential duties required of a state trooper. Thus, as he was permanently, and not temporarily, disabled, he was not entitled to benefits under the Act.

Trooper Durante appealed the decision and a hearing was held before an arbitrator. At this hearing, the State Police presented testimony that Trooper Durante's injuries prevented him from being able to engage in such activities such as forcibly subduing a suspect or physically removing people from harm's way. Arbitration Hearing, 9/29/1998, at 27–29. Thus, Trooper Durante was incapable of performing five of the nineteen duties that the State Police considered essential for a trooper to be able to perform. *Id.* It was unquestioned, however, that Trooper Durante was capable of performing all of the duties of his Staff Services position.

The arbitrator found that after the 1993 recurrence of the injury, Trooper Durante was temporarily, rather than permanently, incapacitated from performing his Staff Services position, a position which is held only by state troopers. The arbitrator therefore awarded benefits.

The Commissioner of the State Police ("Commissioner") adopted the findings of fact as found by the arbitrator. The Commissioner determined, however, that the arbitrator had erroneously awarded benefits and therefore reversed. The Commissioner based his denial of benefits on the fact that Trooper Durante was physically incapable of performing the full range of essential functions of a state trooper.

Trooper Durante appealed to the Commonwealth Court. The Commonwealth Court, sitting *en banc*, reversed the Commissioner. The lower court found that the test for determining whether a trooper was "temporarily incapacitated" was whether "the officer could return to a position which was regularly assigned to state policemen." Commw. Ct. slip op. at

4 (citations omitted). The Commonwealth Court specifically stated that "the ability to perform all of the functions of police training was not the test for determining whether a police officer was temporarily incapacitated...." *Id.* In rendering its decision, the lower court relied in part on this court's decision in *Palmeri v. Pennsylvania State Police,* 508 Pa. 544, 499 A.2d 278 (1985).

President Judge Doyle dissented, stating that he believed that Trooper Durante was ineligible for benefits under the Act. Judge Doyle stated that while the Staff Services position was one historically filled by a state trooper, the position did not implicate the essential duties of a state police officer. Judge Doyle posited that a position could be considered one which is "regularly assigned to state policemen "only if such a position required the execution of all of the duties a trooper could be expected to perform, including subduing suspects and engaging in rescue operations. Judge Doyle closed his dissenting opinion by briefly stating that he believed that *Palmeri* had been circumscribed by this court's decision in *Cunningham v. Pennsylvania State Police,* 510 Pa. 74, 507 A.2d 40 (1986).

The State Police filed a petition for allowance of appeal, and this court granted allocatur.

The question presented to this court is whether a trooper who will never again be able to perform the full range of duties required of a trooper assigned to a field position is permanently disabled for purposes of the Act. As this is a question of law, we are in no fashion constrained by the determination of a lower court; thus, our standard of review is *de novo.* Furthermore, our scope of review in this matter is plenary as we may examine the entire contents of the record. *See Phillips v. A–Best Products Co.,* 542 Pa. 124, 665 A.2d 1167, 1170 (1995).

The State Police argues to this court that we should reverse the order of the Commonwealth Court. It reasons that since Trooper Durante's injury precluded him from performing all of the functions of a trooper assigned to a field position, then he was permanently disabled and thus could not recover under

the Act. Furthermore, the State Police strenuously contends that the Commonwealth Court erred when it concluded that Trooper Durante's return to work in his Staff Services position was tantamount to him returning to work as a state trooper, thus rendering his 1993 incapacity "temporary". Rather, it contends that the relevant inquiry should focus on whether Trooper Durante could perform each of the duties required of a trooper deployed to a position in the field. In support of its position, the State Police relies heavily on this court's decision in *Cunningham, supra.*

Before we begin an analysis of *Cunningham,* it is incumbent upon us to first examine *Cunningham's* progenitor, *Palmeri, supra.* Trooper Palmeri sustained injuries while on duty and went on disability leave. The State Police subsequently asserted that Trooper Palmeri's injury was permanent rather than temporary, and that Trooper Palmeri was not entitled to benefits under the Act. Trooper Palmeri appeared at the hearing, and testified that he was able to perform all of the duties of his pre-injury supervisory position. The State Police, however, desired to have him classified permanently disabled as Trooper Palmeri could not perform all of the functions of every position to which a trooper could be assigned. We rejected the State Police's argument. We stated that in order for the disability to be deemed temporary, rather than permanent,

> [i]t is not necessary that an injured trooper recover so that he is able to perform every conceivable function that could possibly arise in connection with a policeman's duties generally. It is enough that his recovery enable [sic] him to perform the duties of a position that is regularly assigned to state policemen even though the job be entirely sedentary.

*Palmeri,* 499 A.2d at 282.

Shortly thereafter, this court issued its decision in *Cunningham.* That matter considered whether the injuries sustained by Trooper Cunningham were permanent or temporary in nature. Trooper Cunningham was offered a light duty position by the State Police. He rejected the position, however, stating that the position was located too far from his home and

that his injury would not permit him to undertake such a long commute. Trooper Cunningham hypothesized that another light duty position located closer to his home might have been acceptable. Yet, there was no indication whether such a position actually existed in close proximity to the trooper's home. Moreover, several medical specialists examined Trooper Cunningham, and all of them opined that Trooper Cunningham was unable to return to work.

After discussing that Trooper Cunningham rejected the light duty position and that all the medical specialists who examined him opined that his injury precluded him from working as a trooper, we concluded that Trooper Cunningham's injury was permanent. We reasoned that a disability is permanent where "the disability is of a nature which prevents the individual from performing the type of services normally required in his or her occupation." *Cunningham*, 507 A.2d at 47. We stated that it was of great public importance that a trooper be capable of performing all of the duties of his position. We thus emphasized that "it is not enough to demonstrate that [the injured trooper] may be capable of exercising some of the non-physical responsibilities of the position. To the contrary, [the injured trooper] must demonstrate that he or she can adequately assume those responsibilities expected of a state policeman." *Id.* at 47 n. 14.

The State Police argues that *Cunningham* stands for the proposition that unless a trooper is able to perform every function required of a trooper working in the field, then he is permanently disabled. It contends that it is of no moment that an injured trooper is able to perform-and has performed-the duties of a position that has exclusively been filled by troopers. Additionally, the State Police's only recognition of the existence of *Palmeri* is a fleeting reference in a footnote to its brief. The State Police speculates that *Palmeri* is inconsistent with *Cunningham*, and thus no longer controls.

We are unable to dismiss *Palmeri* with such alacrity. *Cunningham* was issued a mere six months after *Palmeri*, with no statement that we were overruling *Palmeri*. It is, of course, possible for one of our decisions to overrule a predecessor case

*sub silentio.* Yet, we find it would be improvident to conclude that *Cunningham* overruled *Palmeri* sub silentio *unless the two are irreconcilable.*

Sober examination of the two cases readily reveals that they can be read so that they harmonize with one another. It is beyond dispute that *Cunningham* stands for the proposition that a trooper must be able to perform all of the essential duties of his job in order to avoid being deemed permanently disabled. The *Cunningham* court did not, however, dictate that the duties should be defined in terms of the most hazardous assignment a trooper could possibly receive, without regard to the duties of other positions held by and regularly assigned to troopers. *Palmeri,* in turn, acknowledged the reality that there are different trooper positions within the State Police, with divergent requirements of strength and dexterity. Thus, the *Palmeri* court held that an injured trooper will be deemed temporarily disabled so long as he is capable of "perform[ing] the duties of a position that is regularly assigned to state policemen even though the job be entirely sedentary." *Palmeri,* 499 A.2d at 282.

A synthesis of *Cunningham* and *Palmeri* reveals that a trooper must be able to perform all of the essential duties of his job in order to avoid being classified as permanently disabled; establishing that he can perform only some of the essential duties of that position is insufficient to avoid a finding of permanent disability. Yet, the injured trooper need not be able to perform every duty of the most demanding position a trooper could hold in order to avoid a finding of permanent disability. Rather, it need only be shown that the injured trooper is able to fulfill all of the essential duties of a position that is held by and regularly assigned to troopers. To arrive at a contrary holding approaches absurdity. For, how can we find that a trooper who is fulfilling all of the duties of his job-a job which is held by and regularly assigned to other troopers-is concomitantly permanently disabled from working?

In applying this rule to the matter *sub judice,* it is clear that Trooper Durante was not permanently disabled. The Staff

Services position has historically been held only by state troopers. Furthermore, the State Police has not alleged that Trooper Durante was incapable of performing this position. Thus, as Trooper Durante was capable of and, in fact, did perform work in a state trooper position, he was not permanently disabled and is entitled to benefits under the Act.

For the foregoing reasons, we affirm the order of the Commonwealth Court.

Former Chief Justice FLAHERTY did not participate in the decision of this matter.

Chief Justice ZAPPALA files a concurring opinion.

Justice SAYLOR files a dissenting opinion in which Justice NIGRO joins.

Chief Justice ZAPPALA concurring.

After an independent review of the record, I believe the evidence presented was ambiguous as to the focus and essential duties of Appellee's position with the State Police. Because Appellant has not met its burden of demonstrating what the essential duties of Appellee's position are, I am constrained to concur with the opinion announcing the judgment of the court. Appellant did not meet its burden of proof in demonstrating that Appellee's injury would permanently keep him from returning to his former position.

Justice SAYLOR dissenting.

The operative language of the Heart and Lung statute proceeds as follows:

> Any member of the State Police Force ... who is injured in the performance of *his duties* ... and by reason thereof is temporarily incapacitated from performing *his duties,* shall be paid by the Commonwealth of Pennsylvania ... his full rate of salary ... until the disability arising therefrom has ceased.

53 P.S. § 637(a) (emphasis added). Significantly, the statute expressly designates the responsibilities of the injured trooper

("his duties") as its litmus. Therefore, if a trooper is temporarily incapacitated from performing his assigned responsibilities, he is entitled to Heart and Lung benefits; if he is permanently unable to perform such duties, he is not.

The concept of a particular trooper's duties need not necessarily be limited exclusively to the particular function served as of the occurrence of his injury. Certainly, the trooper's broader day-to-day responsibilities should be considered relevant in the assessment, and perhaps an even wider range of employment obligations may be considered in the case of troopers who are shown to have been subject to rotating duty assignments. Thus, although the time-of-injury assignment may not function as a limitation on the determination of the scope of a trooper's duties, it is potent evidence of elements that are included among those responsibilities. Indeed, absent some extraordinary circumstance, it may be regarded as substantial evidence of functions the trooper must again be capable of performing to be eligible for temporary Heart and Lung benefits.[1]

The Heart and Lung Act does not speak directly to a recurrence-of-injury situation (such as is presented here) as it affects the ascertainment of a trooper's duties. In such paradigm, consistent with the above, I would not wholly discount that evidence of the Trooper's responsibilities at the time of recurrence may bear some significance to the determi-

1. The State Police Commissioner made an analogous point in commenting on the impact of permanent confinement of a trooper to limited-duty status upon the Heart and Lung assessment:

> Limited duty was described as placing certain conditions and restrictions on Troopers because of existing medical conditions. These restrictions, in turn, limit the functions and duties that the Trooper can perform. It is important to note that, by definition, a Trooper is placed on limited duty exactly because he/she cannot perform the duties of a Trooper. This is an important distinction that clarifies the issue of performance of duties.

*In re Trooper William J. Durante* (Commissioner, Pa. State Police Jan. 26, 1999) (emphasis removed); *accord Cunningham v. Commonwealth, Pennsylvania State Police,* 510 Pa. 74, 86, 507 A.2d 40, 47 (1986) ("An individual ... who suffers a forty percent permanent partial disability to his lower back cannot ... perform the duties of a state policeman.").

nation of his duties. But where the factfinder has attributed greater weight to time-of-injury responsibilities and requirements for general fitness in the occupation in delineating the relevant duties, I do not believe that its judgment should be disturbed, unless it can be said that these latter factors fall short of substantial evidence. In my view, for an appellate court to rest its contrary determination on the identification of limited responsibilities performed by some subset of troopers in general, or a light-duty assignment made available to the trooper after his injury, is in tension with the Heart and Lung Act as stated, *see generally supra* & note 1, its underlying policy,[2] and restraints on judicial review of administrative adjudications, including respect afforded to factual findings made by an agency that are supported by substantial evidence. *See* 2 Pa.C.S. § 704. Further, such approaches would seem to facilitate potentially perverse incentives on the part of the State Police in the calculus that it must perform in its relationship with an injured trooper, for example, in militating toward possible curtailment of compassionate duty assignments.

**2.** The purpose of the Heart and Lung Act is to provide Commonwealth and municipal employees engaged in police, corrections, or fire-fighting functions with temporary disability compensation for injuries incurred in the course of their sometimes-hazardous duties, with the guarantee of uninterrupted income during such disability constituting both an attraction for service and an incentive for a reasonably speedy return to full active duty. *See Camaione v. Borough of Latrobe*, 523 Pa. 363, 366–67, 567 A.2d 638, 640 (1990). While compensation pursuant to the Heart and Lung Act is similar in certain respects to that provided under the Workers' Compensation Act, the latter's purpose is more directly humanitarian, as it provides benefits to injured workers for losses of earning power resulting from either temporary or permanent disability, whereas the former extends benefits only for temporary disability. *See generally Iben v. Borough of Monaca*, 158 Pa.Super. 46, 49, 43 A.2d 425, 427 (1945) (differentiating the coverage and purposes of the Workers' Compensation Act with those underlying the Heart and Lung Act). Indeed, the Heart and Lung Act's limitation in this regard has been interpreted as inuring to the interest of the employer as opposed to the employee, *see id.*, and its provisions have been deemed subject to strict construction. *See generally Organ v. Pennsylvania State Police*, 112 Pa.Cmwlth. 352, 355 n. 5, 535 A.2d 713, 714 n. 5 (1988) (citing 1 Pa.C.S. § 1928(b)(8)).

It is also worth noting that ineligibility under the Heart and Lung Act does not preclude a trooper from receiving workers' compensation.

To encapsulate the primary difference between the majority's analytical approach and mine, the majority views the primary question presented as one of law amenable to *de novo* review by this Court, *see* Majority Opinion, *op*. at 371; whereas, I believe that the dispositive determination involves delineation of the individual trooper's assigned duties, which I regard as inherently a factual assessment.[3] Further, to the extent that this Court has designated as controlling the determination whether a trooper can "perform the duties of a position that is regularly assigned to state policemen even though the job be entirely sedentary," *Palmeri v. Commonwealth, Pennsylvania State Police*, 508 Pa. 544, 552–53, 499 A.2d 278, 282 (1985), I would disavow this approach, as I believe that it dilutes the requirements of the Heart and Lung Act, promotes circumvention of the applicable standard of review, and has yielded inconsistent decisions in the appellate arena.

In the present case, Trooper Durante suffered an injury to his back in 1985 and has been unable to return to his time-of-injury duties as a uniformed patrol trooper since 1988.[4] He was placed in a restricted-duty post to accommodate his incapacity, and was adjudged by the State Police Commissioner (as factfinder) to perform, in his light-duty position, "few, if any, functions and duties of a Trooper."[5] Because of numer-

3. *Cf. Jarrett v. ERC Properties, Inc.*, 211 F.3d 1078, 1081 (8th Cir.2000) ("Disputes regarding the nature of an employee's duties are questions of fact[.]" (citation omitted)); *Stern v. National Life Ins. Co.*, 2002 WL 31101684, at *2 (N.D.Ill. Sep.20, 2002) (explaining that "[t]he determination of whether or not [an insured is] unable to perform the substantial and material duties of his occupation at the time of his disability is inherently a fact question"); *Walters v. General Accident and Fire Assurance Co.*, 119 So.2d 550, 556 (La.Ct.App.1960) ("Obviously the question of whether a particular employee is engaged in work of a character different from that which he pursued when injured or is undertaking the same employment but only partially fulfilling the duties thereof, is a question of fact to be adjudicated and determined in the light of all the circumstances surrounding each individual case.").

4. Appellee has been diagnosed as suffering from a degenerative spinal disc condition, resulting, *inter alia*, in a neurological impairment affecting his ability to use his right arm.

5. The State Police Commissioner described Trooper Durante's restricted duties to entail, *inter alia*, "picking up supplies, taking vehicles back

ous surgical procedures and courses of physical therapy attributable to recurrences of his back injury, Trooper Durante's treating physician concluded that, even prior to the recurrence, he was permanently, partially disabled and thus could not return to unrestricted duty.

In such circumstances, I believe that the State Police Commissioner's findings concerning the scope of Trooper Durante's assigned duties are supported by substantial evidence, and the Commissioner's conclusion, based upon such evidence, that Trooper Durante was permanently disabled from performance of his duties for purposes of the Heart and Lung Act is in accordance with law. I would therefore reinstate the administrative determination of benefits ineligibility.

Justice NIGRO joins this dissenting opinion.

and forth for service, automotive maintenance officer, escorting cleaning people around the barracks, and conducting inventory of equipment and supplies."