Christopher NEYHART, Petitioner,

v.

**DEPARTMENT OF CORRECTIONS,**
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 23, 1998.

Decided Dec. 3, 1998.

Christopher J. Neyhart, petitioner, pro se.

Robert M. Wolff, Camp Hill, for respondent.

Before McGINLEY and PELLEGRINI, JJ., and LORD, Senior Judge.

PELLEGRINI, Judge.

Christopher J. Neyhart (Neyhart) appeals from an order of the Pennsylvania Department of Corrections (Department) denying his request to inspect and copy his urinalysis reports under what is commonly known as the "Right–to–Know Act." [1]

Neyhart is an inmate currently incarcerated at the State Correctional Institution at Waymart, Pennsylvania. On December 11, 1997, he made a written request to the Department pursuant to Sections 2 and 3 of the Right–to–Know Act [2] demanding to inspect and copy urinalysis reports that were made

from April 25, 1997 through September 8, 1987, after he gave urine samples while living at the ADAPPT House located in Reading, Pennsylvania, a residential facility providing group services to pre-release and parole community corrections candidates. By letter dated January 6, 1998, the Department denied his request stating that urinalysis reports were not "public records" as that term was defined under the Act. Neyhart wrote the Department stating that he wanted to appeal its denial of his request, but needed information as to how to proceed.[3]

Still not receiving any response from the Department, on January 30, 1998, Neyhart wrote to the Prothonotary for Commonwealth Court stating that he wanted to appeal the Department's denial but did not know how to proceed. By letter dated February 4, 1998, he received a letter from the Prothonotary with general information as to how an appeal could be taken from the Department's decision. On February 26, 1998, Neyhart filed a petition for review with this Court from the Department's January 6, 1998 refusal to allow him to inspect and copy the urinalysis reports. The Department filed a motion to quash his petition arguing that it was untimely because it was filed 51 days after the Department denied his request. Neyhart filed a motion to amend and correct the official docket arguing that the filing date of February 26, 1998, was erroneously entered instead of February 4, 1998. By per curiam orders of March 18, 1998 and March 23, 1998, this Court ordered that the motion to dismiss and the petition to amend the docket would be decided with the merits of the case.

Initially addressing the Department's motion to dismiss Neyhart's petition for review as untimely, the Department cites to Pa. R.A.P. 1512(a)(1) [4] which limits the time for

---

1. Act of June 21, 1957, P.L. 390, *as amended,* 65 P.S. §66.1–66.4.

2. 65 P.S. §§66.2 and 66.3.

3. After he was denied those records, he again wrote to the Department stating that he only wanted the urinalysis report with respect to urine samples he gave between September 1 through 8, 1997, because that report "was the

gravamen for a Parole Revocation Hearing at Berks County Prison on September 11, 1997 and the essence for violating [him] as a parole violator." He received no response and that request is not before us.

4. Pa. R.A.P. 1512(a)(1) provides:

A petition for review of a quasijudicial order, or an order appealable under 42 Pa.C.S. §763(b) (awards of arbitrators) or under any

filing an appeal to 30 days from the date an order is entered, and to Pa. R.A.P. 105(b)[5] which provides that an appellate court may not enlarge the time for filing of a petition for review. The Department argues that Neyhart's petition should be dismissed because it was filed on February 24, 1998, 51 days after his request was denied on January 6, 1998, and was not filed within the requisite 30 day period.

 However, in *Sheets v. Commonwealth, Department of Public Welfare*, 84 Pa.Cmwlth. 388, 479 A.2d 80 (Pa.Cmwlth. 1984), this Court held that a petition for review filed with this Court more than 30 days after the date of the DPW's final order was not untimely because the final order that petitioner received only showed the date of execution of the order and did not specify that date was the actual mailing date so as to indicate the starting date for the appeal period. Relying on *Mihordin v. Unemployment Compensation Board of Review*, 80 Pa. Cmwlth. 569, 471 A.2d 1334, 1336 (Pa. Cmwlth.1984), we stated:

> because knowledge of a decision mailing date is essential when it commences an appeal period, the administrative agency is obligated to indicate it clearly on the decision notice. (citations omitted.) 'A disembodied date on the notice, as in this case, without any indication that it is the mailing date,' is not sufficiently informative.

*See also Howard Hanna v. Zoning Board of Adjustment of Pittsburgh*, 62 Pa.Cmwlth. 620, 437 A.2d 115 (Pa.Cmwlth.1981) (time for filing appeal did not run because no sufficient notice of mailing date even though it could be determined when notice of denial was sent based on date on ZBA's transmittal letter denying application for variance). Because the Department's January 6, 1998 letter to Neyhart denying his request to inspect the urinalysis reports did not indicate that this date was also the mailing date of the letter,

there was no way of knowing when the letter was actually mailed and, as such, Neyhart's petition for review was not untimely filed.

 Addressing the merits of Neyhart's petition for review, he argues that the Department erred by refusing to allow him to inspect and copy urinalysis reports because they were "public records" under the Right–to–Know Act. To gain access to a public record, a citizen need not have an interest or a legitimate purpose in seeking disclosure as long as the record falls within the definition of public record. *Envirotest Partners v. Department of Transportation*, 664 A.2d 208 (Pa.Cmwlth.1995). "Public record" is defined in relevant part under the Right–to–Know Act as:

> any minute, order or decision by an agency fixing the personal or property rights, privileges, immunities, duties or obligations of any person or group of persons: Provided, That the term "public records" shall not mean any report, communication or other paper,
>
> the publication of which would disclose the institution, progress or result of an investigation undertaken by an agency in the performance of its official duties...

65 P.S. §66.1. The definition of "minute, order or decision" has been broadly construed to require only some form of action by an agency that has an effect on someone. *Travaglia v. Department of Corrections*, 699 A.2d 1317 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 550 Pa. 713, 705 A.2d 1313 (1997). Additionally, this Court has held that any record upon which a decision is based becomes a public record. "Just because a document may have an effect on or influence an agency decision, it does not make it an 'essential component' of that decision. The document must either be the basis for or a condition precedent of the decision." *Nittany Printing & Publishing Co., Inc. v. Centre County Board of Commissioners*, 156

---

other provision of law, shall be filed with the prothonotary of the appellate court within 30 days after the entry of the order.

**5.** Pa. R.A.P. 105(b) provides:
**Enlargement of Time.** An appellate court for good cause shown may upon application enlarge the time prescribed by these rules or by

its order for doing any act, or may permit an act to be done after the expiration of such time, but the court may not enlarge the time for filing a notice of appeal, a petition for allowance of appeal, a petition for permission to appeal, or *a petition for review.* (Bold in original, italics added.)

Pa.Cmwlth. 404, 627 A.2d 301 (Pa.Cmwlth. 1993).

In this case, the urinalysis reports on their face are not public records because they are not a "minute, order, or decision" of any agency. Neyhart contends that his later request reducing the number of urinalysis reports requested to just the one for the samples he gave between September 1 through 8, 1997, was a public record because that report was the only evidence offered at the hearing before the Board of Probation and Parole to support his alleged consumption of alcohol and was an essential component of the Department's decision to revoke his parole.[6] However, in his December 11, 1998 request to the Department, from which he received the Department's January 6, 1998 denial of access and from which the present appeal is taken, Neyhart only requested to inspect and copy the reports made between April 25, 1997 through September 8, 1997, but did not set forth any basis that those reports were an essential component of any decision. Accordingly, the Department's decision to deny his request is affirmed.

### ORDER

AND NOW, this 3rd day of December, 1998, the decision of the Department of Corrections dated January 6, 1998, denying Christopher Neyhart's request to inspect and copy urinalysis reports, is affirmed.

---

6. The Department, however, argues that Neyhart was not entitled to parole, and, therefore, not entitled to inspect the reports. What the Department fails to understand is that the Right-to-Know Act is not dependent upon any need or justifiable reason to see a record. The Right-to-Know Act gives any citizen the right to inspect a public record as long as it falls within the definition under the Act.