**Jorge A. GRAY, Petitioner**

v.

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 30, 2006.

Decided July 28, 2006.

Arlene Ann Dudeck, Johnstown, for petitioner.

Howard Ulan, Sr. Asst. Counsel, Harrisburg, for respondent.

BEFORE: PELLEGRINI, Judge, LEAVITT, Judge, and KELLEY, Senior Judge.

OPINION BY Judge PELLEGRINI.

Jorge A. Gray (Gray) petitions this Court to review the order of the Department of Public Welfare (Department) affirming the decision of the Bureau of Hearings and Appeals (BHA) denying his petition to have his mother approved by the Cambria County Mental Health/Mental Retardation Program (County MH/MR Program) as a "qualified family member" provider of services under the Personal Family Direct Support (PFDS) Waiver Program.

Gray is a 21–year–old male diagnosed with Down's Syndrome who is "moderately" mentally retarded[1] and resides with his mother in Cambria County, Pennsylvania. He receives in-home services under the PFDS Waiver Program pursuant to Section 1915(c) of the Social Security Act, 42 U.S.C. § 1396n(c) (2000). The PFDS Waiver Program was developed as a means to enhance the provision of home and community-based services to support people with mental retardation living at home with their families or in their homes. The services Gray receives include short-term respite care (for his mother), adult living skills and community rehabilitation skills through Lifestyle Support Services (Lifestyle), an in-home service provider located in Cambria County. The County MH/MR Program is responsible for administering the PFDS Waiver Program.

Complaining about the quality of Lifestyle's service, Gray's mother requested that the County MH/MR Program deem her a "qualified family member" pursuant to Appendix B–1(f) of the Department's Mental Retardation Bulletin 00–02–12 (issued August 6, 2002) (MR Bulletin) and pay her for providing in-home services to Gray rather than Lifestyle or another provider.[2] The current approved PFDS Waiver Program renewal in Pennsylvania is application CMS Control # 0354.90 as set forth in the MR Bulletin and went into effect July 1, 2002. The MR Bulletin states in relevant part:

> Services may be provided by a qualified family member or relative, independent contractor, or service agency. In the case of providers who are family members, federal and state financial participation is excluded when the provider is a parent providing services for a minor child under the age of 18 or a spouse. For other family members, federal and

---

1. According to Gray's Individualized Education Plan (IEP), he is a "higher functioning" mentally retarded individual with the following strengths: basic functional literacy skills; money skills; keeping the budget at home; good attention to task at hand; good at cleaning, folding, straightening drawers and closets; organizational skills; independent at personal care skills; serious about having a job; tells time to the minute with about 90% accuracy; very dependable when counting on him to perform a particular task at a particular time every day; communicates verbally; effectively intelligent in most situations with careful listening; and has the ability to complete writing tasks.

2. Alternatively, Gray's mother requested that the County MH/MR Program provide 24–hour per day in-home services to Gray. That request is not an issue on appeal.

state financial participation is allowable only when:

(a) The service provided is not a function which the spouse or parent would normally provide for the individual without charge as a matter of course in the usual relationship among members of the nuclear family,

(b) The service would otherwise need to be provided by a qualified provider, and

(c) A qualified provider who is not a family member is either not available to provide this service or can only provide the service at an extraordinarily higher cost than the fee or charge negotiated with the qualified family member.[3]

The County MH/MR Program denied the request because Gray's mother could not be paid for providing PFDS Waiver Program services to Gray under the PFDS Waiver Program rules because there were other service providers in Cambria County capable of providing services to Gray.

Gray's mother sent a letter with a Fair Hearing Request to the County MH/MR Program requesting a hearing on her request that she be compensated for providing PFDS Waiver Program services instead of an authorized provider. On November 20, 2003, the County MH/MR Program sent Gray's mother a letter listing seven options for the provision of PFDS Waiver Program services to Gray if she was not satisfied with Lifestyle's services.

■ At the hearing, Norma Hoke (Hoke), a Program Specialist for the County MH/MR Program, testified that Gray's mother requested that the County MH/MR Program pay her an annual salary for caring for Gray for 6,980 hours per year, which was denied pursuant to Department regulations. As of December 1, 2002, Hoke testified that Gray was authorized to receive 120 hours per month or 30 hours per week of PFDS Waiver Program services, but that Gray's mother had also been offered 160 hours per month or 40 hours per week of PFDS Waiver Program services for Gray in December of 2002. Gray's mother declined the additional 40 hours per month. She further testified that despite being authorized 120 hours per month of PFDS Waiver Program services, Gray's mother never used the full allotment of hours. The greatest number of service hours used by Gray's mother in any given month was 95 hours in July 2003, when Gray underwent foot surgery.

Beth Farbaugh (Farbaugh), the County MR Director, testified next that Gray's mother first contacted her in 2001 concerning being paid to take care of her son at

---

**3.** For the first time on appeal, Gray contends that the MR Bulletin limitation relating to when a family member can provide reimbursed services only applies when a minor child is involved and does not apply to services relating to when a provider family member is providing services to a child over 18. Gray does so by interpreting the sentence, "[i]n the case of providers who are family members, federal and state financial participation is excluded when the provider is a parent providing services for a minor child under the age of 18 or a spouse," to mean that a provider who is a family member cannot be compensated for services if the family member is a parent of a minor child under

the age of 18 or is a spouse of the individual. Gray then interprets the next sentence that begins, "[f]or other family members, federal and state financial participation is allowable only when ..." and the three criteria that follow it, to only apply when family members are providing services to a minor child under the age of 18 or a spouse. Because, under its interpretation, the regulation only applies when the qualified family member is under 18, Gray contends that nothing prevents a qualified family member from providing reimbursed services to an individual over the age of 18. However, because this issue was not raised before the agency, it is waived and may not be raised on appeal. 2 Pa.C.S. § 703(a).

home. Farbaugh noted that she had given Gray's mother the names of different service organizations in the area that may have been able to assist her, and that the County MH/MR Program was unable to pay her as a provider because there were provider agencies available to do those services. Farbaugh opined that the services Gray required could be provided by any of the County MH/MR's service providers. Farbaugh testified that in the past, the County MH/MR Program had offered Gray's mother other providers, but she chose to stay with Lifestyle because they transported Gray and the other in-home providers did not provide transportation.

In support of her son's claim, Gray's mother testified that the requirements of the MR Bulletin were met because the services she performed for her son included transportation, grooming, life skills training and other services which a parent did not typically perform for an adult child. As to criterion (c), she testified that Lifestyle had consistently failed to provide services to her son insofar as there were times when no workers were available to come to the house, workers would arrive late and leave early, or workers would have family or car issues. Gray's mother admitted that the services provided by Lifestyle had subsequently improved due to the addition of two new workers, but she continued to have trouble finding workers during emergencies or on days when her schedule would change at the last minute. Gray's mother testified that the County MH/MR Program had a meeting with Lifestyle to address some of her problems, and she also stated she received a letter from the County MH/MR Program dated November 20, 2003, which provided her with a list of options for her to consider. Gray's mother testified that all of the options presented in the November 20, 2003 letter were not suitable for Gray or her for one reason or another. Gray's

mother testified that she would be a better provider for Gray than Lifestyle or another provider because she has more care and compassion for Gray and knows his wants and needs and can relate to him.

On cross-examination, Gray's mother denied ever being offered 160 hours of in-home care per month by Hoke. Gray's mother admitted that the County MH/MR Program made offers to her to change providers, but she elaborated that none of the options suggested to her were viable. Gray's mother stated that she chose to continue receiving PFDS Waiver Program services from Lifestyle because Lifestyle was the only provider of in-home services in Cambria County that was authorized to provide transportation services; that was the reason why she never received PFDS Waiver Program services from any other provider other than Lifestyle.

Hoke was called again as a rebuttal witness to offer testimony concerning the 160 hours per month of in-home services that were offered to Gray's mother and to testify that there were qualified providers available to provide services to Gray. Hoke testified that she contacted Gray's mother in December of 2002 stating that, as a result of additional funding, Hoke was willing to offer her 40 hours per week for a total of 160 hours per month. Hoke testified that Gray's mother turned her down by stating that she did not feel the additional hours would provide her enough help. Hoke also testified that several agencies were available in Cambria County to provide the services Gray's mother was requesting, but Gray's mother had refused to accept their services. Hoke testified that for as long as Gray has participated in the PFDS Waiver Program, he has only used Lifestyle.

An Adjudication and Final Administrative Action Order was issued by the Ad-

ministrative Law Judge (ALJ) on November 23, 2004, denying Gray's appeal. Gray requested reconsideration from the Secretary of the Department and on March 24, 2005, an Order of Remand was issued by the Secretary setting aside the ALJ's Order and remanding the matter to the BHA to issue a new adjudication.

■ On June 22, 2005, the ALJ affirmed his earlier decision denying Gray's appeal. The ALJ held Hoke's testimony to be credible and that Gray's mother's testimony was not credible. The ALJ also concluded that Gray's mother failed to show she met criterion (c) of the MR Bulletin insofar as she failed to show that a qualified provider who was not a family member was either not available to provide services or could only provide the services at an extraordinarily higher cost than the fee or charge negotiated with the qualified family member. The ALJ found that the County MH/MR Program had adequately demonstrated there were other qualified providers of PFDS Waiver Program services in Cambria County who could meet Gray's needs, and Gray's mother knowingly chose to continue using Lifestyle instead of choosing another provider. The ALJ also was not convinced that the services provided by Lifestyle were inadequate, noting that Gray's mother had admitted that services improved when two new workers began providing services to Gray. The ALJ maintained that Gray's mother could still not provide services pursuant to the MR Bulletin even if Lifestyle had provided inadequate service. The Secretary of the Department affirmed the ALJ's de-

termination on January 12, 2006, and this appeal followed.[4]

■ Gray contends that the Secretary's finding that a non-family member could provide services is not supported by substantial evidence.[5] He submits that there was substantial evidence because his mother testified that his needs were not being met by Lifestyle, and none of the providers suggested by the County MH/MR Program are qualified to meet Gray's needs as Lifestyle is the only qualified provider that provides transportation.

In the present case, Hoke's testimony that there were other qualified service providers available was found credible, while, correspondingly, Gray's mother's testimony concerning Lifestyle's inadequacies was found not credible. Because the only substantial evidence was Hoke's testimony that there was qualified non-family members available to provide appropriate services, the fact-finder properly found that Gray failed to satisfy criterion (c) of the MR Bulletin. Although Gray might not agree with these credibility determinations, it was within the discretion of the fact-finder to make these credibility determinations and they will not be disturbed on appeal. *R. v. Department of Public Welfare*, 535 Pa. 440, 636 A.2d 142 (1994); *Winston v. Department of Public Welfare*, 675 A.2d 372 (Pa.Cmwlth.1996).

Accordingly, because Gray has not met all the criteria under the MR Bulletin necessary to allow his mother to be reimbursed for the services she provides, the Secretary's decision is affirmed.

---

4. Our scope of review is limited to determining whether an error of law was committed, whether constitutional rights were violated or whether necessary findings of fact are supported by substantial evidence. *B.E. v. Department of Public Welfare*, 654 A.2d 290 (Pa. Cmwlth.1995).

5. Substantial evidence is evidence which outweighs inconsistent evidence and which a reasonable person would accept as adequate to support a conclusion. *L.S. v. Department of Public Welfare*, 828 A.2d 480 (Pa.Cmwlth. 2003).

## ORDER

AND NOW, this *28th* day of *July*, 2006, the final order of the Secretary of the Pennsylvania Department of Public Welfare, dated January 12, 2006, is affirmed.