JULIA RIBAUDO SENIOR SERVICES, Petitioner

v.

DEPARTMENT OF PUBLIC WELFARE, Respondent.

Commonwealth Court of Pennsylvania.

Argued Dec. 11, 2006.
Decided Jan. 4, 2007.
Reargument Denied Feb. 21, 2007.

Joseph F. Murphy, Harrisburg, for petitioner.

Jeffrey P. Schmoyer, Asst. Counsel, Pittsburgh, for respondent.

BEFORE: SMITH–RIBNER, Judge, and PELLEGRINI, Judge (P.), and FRIEDMAN, Judge.

OPINION BY Judge PELLEGRINI.

Julia Ribaudo Senior Services (Provider) appeals from a final order of the Secretary of the Department of Public Welfare (Department) upholding an order of the Bureau of Hearings and Appeals (Bureau) that Provider's audit report was untimely and no basis existed to grant a *nunc pro tunc* appeal.

Provider is a nursing facility enrolled in the Department's Medical Assistance Program. It filed a cost report with the Department for the fiscal year ending December 31, 2002, and was notified on June 24, 2003, that the report was accepted for audit. The audit would determine Provider's reimbursement under the Medical Assistance Program. Having not received the December 31, 2002 audit report by March 24, 2004, Provider's administrator contacted the Department inquiring about its status. She was told that the report was still being processed and that the Department had one year from the date of acceptance of the cost report to issue the audit report. On March 31, 2004, the Department purportedly mailed a transmittal letter and the audit report to Provider stamping "March 31, 2004" as the date on both items. The transmittal letter stated that Provider could appeal the audit report's findings by filing a written request for a hearing with the Bureau within 33 days of the date of the letter.[1] However, Provider filed no appeal because it alleged that it had neither received the letter nor the report.

■ By September 2004, Provider's Chief Financial Officer, Michael Callan (Callan), requested that Robert Sobanski (Sobanski), an accountant at the law firm representing Provider, perform rate estimates for its facility. After reviewing Provider's files, Sobanski realized that the December 31, 2002 audit report was absent. He contacted Callan and learned that the report had not been received. Sobanski then contacted the Department, was informed that the audit report had been issued, and requested a copy from Ian Cohen (Cohen), the Department's Chief Rate Analyst. Once Sobanski received the audit report on October 27, 2004, Provider disputed its contents and on December 14, 2004, requested a hearing before the Bureau. Upon learning that its appeal of the audit report was untimely, Provider filed a *nunc pro tunc* appeal[2] on December 30, 2004, contending that it had not received the December 31, 2002 audit.

A telephone hearing was conducted before the Bureau's Administrative Law Judge (ALJ). Provider's Business Office Manager, Patricia Greenwood (Greenwood), testified that she had never received the audit report, and Sobanski was not authorized to act as Provider's agent for the purposes of receiving the audit from the Department.

In order to demonstrate that the transmittal letter and audit were mailed, Elizabeth Penaranda (Penaranda), a clerk typist for the Department, testified that she was directly involved in the mailing of audit reports, and that the December 31, 2002 audit report would have been mailed out on March 31, 2004, in accordance with the Department's practice and custom. She stressed that around that time, the Department had experienced no problems regarding the mailing of their audit reports, and the report in question was never returned as undeliverable. Similarly, Chief Rate Analyst Cohen testified that the audit report was properly mailed on March 31, 2004, and that it was the Department's

---

1. The language appearing in the transmittal letter declared: "If you disagree with the findings contained in the enclosed audit report, you have the right to appeal by filing a written request for a hearing with the Department's Bureau of Hearings and Appeals ("BHA") within 33 days of the date of this letter."

2. An appeal *nunc pro tunc* will be allowed only where extraordinary circumstances involving fraud, a breakdown in the administrative process caused the delay in filing, or where non-negligent circumstances related to the petitioner, his counsel or a third party caused the delay. *J.A. v. Department of Public Welfare*, 873 A.2d 782 (Pa.Cmwlth.2005).

standard practice to stamp the mailing date (March 31, 2004) on a notice the day it was mailed. Cohen also testified that when he personally provided a copy of the report to Sobanski on October 27, 2004, Sobanski stated that he was acting on Provider's behalf.

▮ Finding the Department's witnesses credible, the ALJ concluded that the Department properly mailed the audit report on March 31, 2004, but even if it had not, Provider had been personally served a copy of the audit report on October 27, 2004, when it was given to Sobanski. Determining that Provider failed to demonstrate any articulable basis as to why it had not timely appealed the audit report, either when it was mailed or when it was hand-served, the ALJ denied Provider's request for a *nunc pro tunc* appeal. The Bureau adopted the ALJ's recommendations, and Provider requested reconsideration with the Secretary of the Department who upheld the decision in its entirety. This appeal followed.[3]

▮ The failure to appeal an administrative agency's action in a timely fashion is a jurisdictional defect. *C.S. v. Department of Public Welfare*, 879 A.2d 1274 (Pa.Cmwlth.2005). For entities like Provider enrolled in the Medical Assistance Program, an appeal of an administrative action must be taken within 30 days of the date of the notice of departmental action or within 33 days of the date of the notice if given by mail. 67 Pa.C.S. § 1102. According to the Department's Standing Practice Order (SPO), Rule 13 *Notice of agency actions*, regarding the contents of a notice, notices must contain the effective date of the agency action, the basis for the agency action, and the date the notice was deposited into the mail or otherwise served on the provider. 33 Pa. B. 3067 (2003).

Not contesting the Bureau's finding that the December 31, 2002 audit report had been mailed on March 31, 2004, Provider argues that while the transmittal letter and report were stamped with the "March 31, 2004" date, they were defective because they did not comply with the Department's SPO Rule 13 requiring that a mailing date be denominated.

▮ When an administrative agency makes service by mail, the date of mailing is required to be listed on the notice of adjudication because that date is "deemed to be the date of entry of the order ..." and the date from which the time for appeal begins to run. 42 Pa.C.S. § 5572. SPO Rule 13. In *Sheets v. Department of Public Welfare*, 84 Pa.Cmwlth. 388, 479 A.2d 80 (1984), we addressed whether the date on a letter without more satisfied the requirement that a date of mailing be listed on the notice of the adjudication. In that case, the Department's order bore a typed date and also bore a stamp designating the same date as the "DATE FINAL ADMINISTRATIVE ACTION." The appeal from that order would have been untimely if either of those markings were legally meaningful. In holding that listing the date in either form was no substitute for denominating the date of mailing so as to constitute the starting date for the appeal period, quoting from *Mihordin v. Unemployment Compensation Board of Review*, 80 Pa.Cmwlth. 569, 471 A.2d 1334, 1336 (1984), we stated that "because knowledge of a decision mailing date is essential when it commences an appeal period, the administrative agency is

---

**3.** Our scope of review of a decision of the Department is limited to determining whether an error of law was committed, whether constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. *Gray v. Department of Public Welfare*, 903 A.2d 647 (Pa.Cmwlth. 2006).

obligated to indicate it clearly on the decision notice. *Schmidt v. Commonwealth,* 495 Pa. 238, 241, 433 A.2d 456, 458 (1981) (state tax case). 'A disembodied date on the notice, as in this case, without any indication that it is the mailing date,' is not sufficiently informative. *Federated Department Stores v. Board of Property Assessment Appeals and Review of Allegheny County,* [78 Pa.Cmwlth. 346, 467 A.2d 908 (1983)]..., (local tax case)." *See also Howard Hanna v. Zoning Board of Adjustment of Pittsburgh,* 62 Pa.Cmwlth. 620, 437 A.2d 115 (1981) (time for filing appeal did not run because no sufficient notice of mailing date existed even though it could be determined when notice of denial was sent based on the date found on the Zoning Board of Adjustment's transmittal letter denying application for variance); *Appeal of Borough of West View,* 93 Pa.Cmwlth. 380, 501 A.2d 706 (1985) (the date on a notice not designated as a mailing date did not establish the starting date for the appeal time); *Department of Transportation, Bureau of Driver Licensing v. Walzer,* 625 A.2d 1346 (Pa.Cmwlth. 1993) (Licensee's appeal of her suspension was timely because she was unaware of the beginning of the appeal period when the Department of Transportation failed to notify her of the mailing date in her reinstatement letter); *Neyhart v. Department of Corrections,* 721 A.2d 391 (Pa. Cmwlth.1998) (Prisoner's appeal of a denial to obtain health records was not untimely because the Department of Correction's notice denying access to the records, although dated, contained no mailing date which would inform him of the start of the appeal period).

Citing to *Wilkes–Barre Holiday Inn v. Luzerne County Board of Assessment Appeals and Wilkes–Barre Area School District,* 674 A.2d 1181 (Pa.Cmwlth.1996), the Department contends that Provider was given sufficient notice of its time to appeal

the audit report even if "March 31, 2004" was not expressly designated as the mailing date because the transmittal letter stated that Provider had 33 days from the date of the letter (March 31, 2004) to appeal. In *Wilkes–Barre Holiday Inn,* the taxpayer received the Board of Assessment's decision notice bearing the date May 23, 1991, and filed an appeal on June 28, 1991, beyond the 30–day appeal period. Although "May 23, 1991" was not specified as the mailing date, the notice stated that the taxpayer could appeal the Board of Assessment's decision within 30 days from the date of the notice. We held that the notice sufficiently made the taxpayer aware that it had 30 days from May 23, 1991, to file an appeal with the trial court, even though it lacked a mailing date. If *Wilkes–Barre Holiday Inn* applied, we would agree with the Department that the appeal would be untimely. However, that case is at variance with our Supreme Court's decision in *Schmidt,* has been inferentially reversed by our more recent decision in *Neyhart,* and the rule is that the "date of mailing" still must be denominated on the notice of adjudication for the appeal period to begin.

Although the Department presented testimony regarding its practice and custom to stamp the date on a notice the day it was to be mailed, like the notices in *Sheets* and *Hanna,* the date stamped on the transmittal letter and report or evidence that it was mailed on that date is no substitute for a clearly designated mailing date. Because a mailing date was not present, the Department's notice did not serve to begin the appeal period.

 Even if the mailed notice did not start the appeal period, the Department contends that the appeal was still untimely because Sobanski was Provider's agent for the purpose of receiving the December 31, 2002 audit report on October 27, 2004.

Having failed to appeal within the statutory period from that date, the Department contends that Provider's appeal is still untimely. For service of notice on an agent, it must be shown that the agent was authorized to receive notice. *City of Philadelphia v. Berman*, 863 A.2d 156 (Pa. Cmwlth.2004). Provider employed Sobanski only to prepare rate projections, and the audit report was given to assist him in preparing those reports. Sobanski's employment for a specific project in no way confers on him general agent status or apparent authority to accept service of the audit report.[4] Because Sobanski was not Provider's agent, personal service was not effected on Provider when Sobanski acquired the audit report on October 27, 2004.

Accordingly, because the audit report was insufficient to notify Provider of the commencement of the appeal period and Sobanski was not Provider's agent for purposes of being served with the audit report, the order of the Secretary finding that the appeal was untimely is reversed and the matter is remanded to the Bureau to hear Provider's appeal of the December 31, 2002 audit report.

Judge SMITH–RIBNER dissents.

### ORDER

AND NOW, this *4th* day of *January*, 2007, the order of the Secretary of the Department of Public Welfare is reversed and the matter is remanded to the Bureau to hear Provider's appeal of the December 31, 2002 audit report.

Jurisdiction relinquished.

---

4. In the context of service or process, apparent authority to do an act is created as to a third person by written or spoken words or any other conduct by the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him. *Commonwealth v. One 1991 Cadillac Seville*, 853 A.2d 1093 (Pa. Cmwlth.2004).